WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Siren, Inc., an Arizona corporation, and Jared Kilgore | ) ) ) ) | |
| Plaintiffs, | ) ) | No. CIV 06-1109 PHX RCB |
| vs. | ) ) | O R D E R |
| Firstline Security, Inc., a Utah corporation, et al. | ) ) ) | |
| Defendants. | ) ) | |

On April 21, 2006, Plaintiffs Siren, Inc. ("Siren") and Jared Kilgore filed a complaint in the Superior Court of Arizona in Maricopa County seeking monetary and injunctive relief for claims sounding in tort, contract, and state antitrust law.  Compl. (doc. # 1, pt. 2).  The matter was removed to this Court on that same day.  Notice (doc. # 1).  Currently pending before the Court are Plaintiffs' motion for temporary restraining order (doc. # 4, pt. 7) and Defendants' motion to dismiss or, in the alternative, to stay proceedings (doc. # 5).  Both motions have been fully briefed, and the Court heard oral argument on May 15, 2006.  Having

1  carefully considered the arguments raised, the Court now rules.

2  **I.    BACKGROUND**

3      Defendant Firstline Security, Inc. ("Firstline") is in the

4  business of marketing and selling home security systems and

5  recruiting sales representatives to sell such systems door-to-door.

6  Keyes Aff. (doc. # 14, pt. 2) ¶ 3.  Jared Kilgore was employed by

7  Firstline from 2002 through November 2005, at one time as a Vice

8  President and later as an acting Division President.  Kilgore Aff.

9  (doc. # 16, pt. 2) ¶¶ 6, 28.

10     On August 26, 2004, Kilgore and Firstline executed a Vice

11 President Employment Agreement ("VP Agreement").  Three provisions

12 of the VP Agreement are especially relevant to the matters now

13 pending before the Court.

14     First, the non-compete clause would prohibit Kilgore from (1)

15 "recruit[ing] sales representatives in, or within a fifty (50) mile

16 radius of . . . Mesa, Arizona; Tempe, Arizona"; (2) "market[ing] or

17 sell[ing] home security systems in the States and Territories of

18 the United States in which [Firstline] operates"; (3) "engaging

19 directly in [a competing business] as an owner, shareholder,

20 member, partner, or agent"; and (4) "employing or recruiting any

21 potential employee of [Firstline] for any purpose related to [the

22 business of recruiting sales representative to market and sell home

23 security systems and the marketing and selling of such systems]."

24 VP Agreement (doc # 4, pt. 2) at 45 ¶ 6.  These restrictions would

25 remain in effect for the duration of the agreement and for

26 twenty-four months after its termination.  <u>Id.</u>

27     Second, the non-solicitation clause would prohibit Kilgore

28 from "directly or indirectly . . . solicit[ing] or otherwise

- 2 -

1   induc[ing] any employee or former employee of [Firstline] to enter

2   into employment or to participate in any activity that is in

3   competition with [Firstline]." Id. at 46 ¶ 7.

4      Third, the forum selection and choice of law provisions state

5   as follows:

6          This Agreement shall be governed by the laws of
            the State of Utah and any action relating to

7          this Agreement or the breach or enforcement
            hereof shall be brought and maintained in the

8          Courts of the State of Utah, each of the
            parties consenting [sic] the exclusive personal

9          jurisdiction of such courts as if they were
            personally present in Utah.

10

11   Id. at 47 ¶ 19.

12      Kilgore carried out his duties as Vice President in Arizona,

13   traveling to that state with a Firstline sales team recruited from

14   other states. Kilgore Aff. ¶ 11.

15      At the end of the 2005 summer sales season, after informing

16   Firstline executives that he intended to terminate his employment

17   with the company, Kilgore met with Wright Thurston and Defendant

18   Trevor Keyes of Firstline in Utah on August 12, 2005. At this

19   meeting, Kilgore was asked to return to Utah on August 24, 2005 to

20   discuss employment options with Thurston. Id. ¶¶ 16-18.

21      At the August 24 meeting, Kilgore agreed orally ("Consulting

22   Agreement") to a temporary two-month trial period as an acting

23   Division President for Firstline. Id. ¶¶ 19-22. Kilgore never

24   signed a written agreement or formally accepted a position as a

25   full Division President.

26      On November 12, 2005, Kilgore formally terminated his

27   employment with Firstline. Id. ¶ 28.

28      Kilgore subsequently established Siren, Inc. ("Siren") as an

1    Arizona corporation as of March 10, 2006.  Like Firstline, Siren is

2    in the business of selling home security systems.  Kilgore is

3    Siren's sole owner.  Id. ¶¶ 2-3.  Siren has recruited sales

4    representatives by email communications to college students in

5    Arizona.  Id. ¶ 40.  Siren plans to sell security systems in the

6    summer 2006 sales season in three markets: Cleveland and Columbus,

7    Ohio and Indianapolis, Indiana.  Id.

8        On April 4, 2006, Firstline filed a complaint in state court

9    in Utah against Kilgore alleging (1) breach of contract, (2)

10   intentional interference with contractual relations, (3)

11   misappropriation of corporate opportunity, (4) misappropriation of

12   trade secrets, (5) breach of fiduciary duty, (6) unjust enrichment,

13   and (7) conversion, and (8) seeking preliminary and permanent

14   injunctive relief based on those claims.  See Compl. (doc. # 4, pt.

15   2) at 24-41.

16       After the filing of that lawsuit, Plaintiffs aver that

17   Firstline officials have contacted current and prospective Siren

18   employees to induce them to not join Siren, breach their employment

19   contracts and join Firstline, or to otherwise stop working for

20   Siren.  Am. Compl. (doc. # 16) ¶ 43.  For example, Plaintiffs claim

21   that Keyes and other Firstline officials have (1) mentioned the

22   Utah lawsuit and made other references to their plans of putting

23   Siren out of business, see id. ¶ 46, (2) threatened that Firstline

24   will have people follow Siren's salesmen around during the summer

25   to make sure they cannot make any sales, id. ¶ 49, (3) said that

26   Keyes would personally set aside $250,000 per Siren office to make

27   sure that Siren employees in those cities do not show up to work,

28   id. ¶ 50, (4) indicated that Keyes would "hire four Mexicans to put

- 4 -

up flyers on the doors before and after the employees of Siren have knocked them to kill Siren's business," id. ¶ 51, and (5) stated that Defendants have a "mole" or "inside man" at Siren, id. ¶ 48. Defendants deny these allegations, Keyes Aff. ¶¶ 21-22, Redd Aff. ¶¶ 16-18, but concede that Keyes may have made some statements he later regretted "out of concern for the damage being inflicted on Firstline" at the time.  Keyes Aff. ¶ 19.

On April 21, 2006, Siren and Kilgore filed the present action in the Superior Court of Arizona in Maricopa County alleging (1) intentional interference with contractual relations, (2) defamation and trade libel, (3) breach of contract, (4) restraint of trade, (5) abuse of process, and (6) seeking preliminary and permanent injunctive relief based on those claims.  See Compl. (doc. # 1, pt. 2).  Defendants removed the action to this Court that same day.

Plaintiffs subsequently filed an amended complaint (doc. # 16), naming Jane Doe Keyes in place of Defendant Erin Keyes, and dropping the breach of contract claim.  See Am. Compl. (doc. # 16).

## II.   DEFENDANT ERIN KEYES'S RULE 12(b)(2) MOTION TO DISMISS

Defendant Erin Keyes has moved to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  The original complaint contains no allegations against Erin Keyes; her joinder as a party defendant is based solely on her capacity as a potential interest holder in a marital community benefitted by the allegedly tortious conduct of her husband, Trevor Keyes.[1]  See Compl. (doc. # 1, pt. 2) ¶ 4.  Because Utah, their

----

[1]  The only paragraph in the original complaint concerning Erin Keyes reads as follows:

1  state of marriage and domicile, is not a community property state,

2  she maintains that there is no such marital community in which she

3  could be a current interest holder.  Mot. (doc. # 5) at 6-7.  Thus,

4  she contends that the Court cannot exercise personal jurisdiction

5  over her.  Id.  The Court construes this motion as a request for an

6  order dropping Defendant Erin Keyes for reason of misjoinder.[2]

7      Rule 21 of the Federal Rules of Civil Procedure, titled

8  "Misjoinder and Non-Joinder of Parties," provides that "[p]arties

9  may be dropped or added by order of the court on motion of any

10  party or of its own initiative at any stage of the action and on

11  such terms as are just."  Id.  The power to drop or add parties is

12  vested to the sound discretion of the court.  See Sams v. Beech

13  Aircraft Corp., 625 F.2d 273, 277 (9th Cir. 1980); see also Fair

14  Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)

_____

Keyes and his wife, Erin, are residents of the
State of Utah and, on information and belief,
were at all relevant times herein husband and
wife.  Accordingly, this action is brought
against them and their marital community, as the
actions taken by Keyes were done for the benefit
of and in furtherance of his marital community.

Compl. (doc. # 1, pt. 2) ¶ 4.

    [2]  In an apparent effort to evade dismissal on the bases set
forth in Defendants' motion to dismiss (doc. # 5), Plaintiffs have
filed an amended complaint (doc. # 16).  In their response to
Defendants' motion to dismiss, Plaintiffs claim that the amended
complaint does not name Erin Keyes as a party, thereby mooting her
motion.  See Resp. (doc. # 15) at 1-2.  As Defendants point out,
however, the amended complaint (doc. # 16) names "Jane Doe Keyes"
instead.  Reply (doc. # 19) at 2 n.1.  Accordingly, Defendants seek
clarification that Erin Keyes will be dropped as a party, and the
Court rules on her motion on that basis.
    As the claims in the complaint and amended complaint against the
remaining defendants are essentially the same, the analysis would be
the same whether directed to the complaint or amended complaint.

1  (citing 3A <u>Moore's Federal Practice</u> § 21.05 (1970)) (Rule 21

2  affords broad discretion to court in adding or dropping parties).

3       While Rule 21 does not define "misjoinder," Rule 20 sheds

4  light on the matter by setting forth the standard for permissive

5  joinder of parties defendant.

6                  All persons . . . may be joined in one action
                   as defendants if there is asserted against them
7                  jointly, severally, or in the alternative, any
                   right to relief in respect of or arising out of
8                  the same transaction, occurrence, or series of
                   transactions or occurrences and if any question
9                  of law or fact common to all defendants will
                   arise in the action.

10

11 Fed. R. Civ. P. 20(a).  Rule 17(b) further instructs that "the

12 capacity of an individual . . . to sue or be sued shall be

13 determined by the law of the individual's domicile."  Fed. R. Civ.

14 P. 17(b).  Finally, the defense of lack of capacity to be sued may

15 only be raised by "specific negative averment, which shall include

16 such supporting particulars as are peculiarly within the pleader's

17 knowledge."  Fed. R. Civ. P. 9(a); <u>see, e.g.,</u> <u>Comstock v. Pfizer</u>

18 <u>Ret. Annuity Plan</u>, 524 F. Supp 999, 1002 (D. Mass. 1981) (granting

19 motion to dismiss because named defendant was an unincorporated

20 association, not subject to suit under state law).

21      It is apparent from the face of Plaintiffs' Complaint that

22 Defendant Erin Keyes is a domiciliary of Utah.  Compl. (doc. # 1,

23 pt. 2) ¶ 4.  Her capacity to be sued must therefore be determined

24 by Utah law.  <u>See</u> Fed. R. Civ. P. 17(b).  Unlike Arizona, which

25 specifically permits judgment creditors to levy upon community

26 property by joinder of a tortfeasor's spouse as a party defendant,

27 Utah does not operate under principles of community property or

28 provide a similar provision for joinder.  <u>Compare</u> Ariz. Rev. Stat.

§§ 25-211, -215(D) (West 2006), and <u>Vikse v. Johnson</u>, 137 Ariz. 528, 672 P.2d 193, 196 (Ct. App. 1983), <u>with</u> Utah Code Ann. §§ 30-2-1 to -11 (West 2006).  Therefore, in Utah, there does not exist any marital community to which a tort victim may look for satisfaction of a judgment.  Moreover, under Utah law, "[n]either spouse is personally liable for the separate debts, obligations, or liabilities of the other . . . incurred during marriage . . . ." Utah Code Ann. § 30-2-5(1)(b) (West 2006).

In light of the foregoing considerations, it is clear that Plaintiffs have no right to relief against Erin Keyes and that she may not be sued for her husband's torts based solely on her marital capacity.  These particulars have been amply expounded in Defendant's motion as required by Rule 9(a).  <u>See</u> Mot. (doc. # 5) at 6-7.  Defendant's motion, construed as a Rule 21 motion for an order dropping her as a party to this action, will be granted.

**III. DEFENDANTS' RULE 12(b)(3) MOTION TO DISMISS**

All Defendants have moved to dismiss Plaintiffs' Complaint on the basis of a forum selection clause in the VP Agreement rendering venue improper in this Court.  Mot. (doc. # 5) at 7-10.  That provision states that "any action relating to this Agreement or the breach or enforcement hereof shall be brought and maintained in the Courts of the State of Utah, each of the parties hereof consenting [sic] the exclusive personal jurisdiction of such courts as if they were personally present in the State of Utah."  VP Agreement (doc. # 4, pt. 2) at 47 ¶ 19.

**A. Standard of Review**

In resolving a Rule 12(b)(3) motion to dismiss, the pleadings need not be accepted as true and the district court may consider

facts outside the pleadings.  See Murphy v. Schneider Nat'l, Inc.,
362 F.3d 1133, 1137 (9th Cir. 2003) (citations omitted).  When
faced with a Rule 12(b)(3) motion based on a forum selection
clause, "the trial court must draw all reasonable inferences in
favor of the non-moving party and resolve all factual conflicts in
favor of the non-moving party."  Id. at 1138.

**B. Choice of Law**

Because this is a diversity case arising from alleged
negligence occurring in Arizona, the Court applies federal
procedural law and state substantive law.  Erie R.R. v. Tompkins,
304 U.S. 64, 78-79 (1938).  Although the VP Agreement contains a
choice of law provision selecting Utah law, see VP Agreement (doc.
# 4, pt. 2) at 47 ¶ 19, the Ninth Circuit has held that, in the
context of determining venue, Erie principles require that federal
law apply to both the enforcement and interpretation of forum
selection clauses.  Manetti-Farrow, Inc. v. Gucci Am., Inc., 858
F.2d 509, 512-13 (9th Cir. 1988).

**C. Discussion**

**1. Enforceability of the Forum Selection Clause**

The enforceability of a forum selection clause is controlled
by the Supreme Court's decision in The Bremen v. Zapata Off-Shore
Co., 407 U.S. 1 (1972), in which it was held that forum selection
clauses are presumptively valid.[3]  See The Bremen, 407 U.S. at 10;

---

[3]  Although The Bremen involved an international forum selection
clause in a commercial contract, the Ninth Circuit has approved The
Bremen framework for domestic forum selection clauses and employment
contracts.  See Spradlin v. Lear Siegler Mgmt. Servs. Co., 926 F.2d
865, 867-68 (9th Cir. 1991) (employment contract); Pelleport
Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 279
(9th Cir. 1984) (domestic forum selection clause).

1  <u>Murphy</u>, 362 F.3d at 1140.  The party opposing enforcement of the

2  forum selection clause must "clearly show that enforcement would be

3  unreasonable and unjust, or that the clause was invalid for such

4  reasons as fraud or over-reaching."  <u>The Bremen</u>, 407 U.S. at 15;

5  <u>cf.</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 473 n.14 (1985)

6  (holding that enforcement of freely negotiated forum selection

7  clause that is not "unreasonable and unjust" would not offend due

8  process).  Defendants argue that Plaintiffs cannot meet this heavy

9  burden to escape the enforcement of a provision that was freely

10  negotiated.  <u>See</u> Mot. (doc. # 5) at 7-8.  Because Plaintiffs have

11  not challenged its enforceability, the Court will proceed on the

12  basis that the forum selection clause is enforceable.[4]  <u>See</u> Resp.

13  (doc. # 15); Reply (doc. # 21).

14  **2. Scope of the Forum Selection Clause**

15  A forum selection clause is not axiomatically limited in scope

16  to contract claims, particularly in this case where the "relating

17  to" language generally lends to a broader range of covered

18  disputes.  <u>Cf.</u> <u>Mediterranean Enters., Inc. v. Ssangyong Corp.</u>, 708

19  F.2d 1458, 1463-64 (9th Cir. 1983) (discussing how omission of

20  "relating to" language in an arbitration clause results in a

21  narrower scope of covered disputes).[5]  Forum selection clauses have

22  ──────────────

23  [4]  The Court acknowledges that Plaintiffs' briefs occasionally
refer to the "overbroad and otherwise unlawful non-compete clauses."
24  <u>See, e.g.</u>, Reply (doc. # 21) at 12.  These unelaborated
characterizations made in passing are insufficient to overcome the
25  presumption of validity established by <u>The Bremen</u>.

26  [5]  Although <u>Mediterranean Enterprises</u> dealt with the
interpretation of an arbitration clause, the Ninth Circuit has
27  explained that the guidance of such cases is equally applicable to
the interpretation of a forum selection clause, because an
28  arbitration clause is simply a specific type of forum selection

1  frequently been held to apply to pure tort claims where the

2  "resolution of the claims relates to interpretation of the

3  contract." See, e.g., Manetti-Farrow, Inc., 858 F.2d at 511, 514

4  (claims of tortious interference and tortious interference with

5  contractual relations).  A forum selection clause can also apply to

6  litigants who were not parties to the contract provided that the

7  alleged conduct of those parties is "closely related to the

8  contractual relationship." Id. at 514 n.5.[6]

9     In the instant case, Plaintiffs assert claims for defamation

10 and trade libel (Count III), abuse of process (Count V),

11 intentional interference with contractual relations (Count II), and

12 restraint of trade in violation of state antitrust laws (Count IV);

13 based on these claims, Plaintiffs also seek injunctive relief

14 (Count I).  Am. Compl. (doc. # 16).  The Court discusses each claim

15 in turn in considering whether they are within the purview of the

17 clause. Manetti-Farrow, Inc., 858 F.2d at 514 n.4 (citing Scherk v.

18 Alberto-Culver Co., 417 U.S. 506, 417 (1974)).

19    [6] At oral argument, Plaintiffs' counsel argued that Siren cannot

20 be bound by the forum selection clause because it was never a party
to the VP Agreement.  Counsel also suggested that Manetti-Farrow is
distinguishable in that it extended the reach of the forum selection

21 clause only to defendants who had not signed the contract.  The Court
disagrees.  There is nothing in the Ninth Circuit's Manetti-Farrow

22 decision to believe that the court intended such a narrow and
imbalanced rule.

23    Defendants assertion that Kilgore has breached his obligations

24 under the non-compete and non-solicitation covenants of the VP
Agreement is plainly traceable to Siren's conduct in hiring former

25 Firstline employees, recruiting in Tempe and Mesa, and entering the
Cleveland, Columbus, and Indiana markets.  Kilgore is Siren's sole

26 owner.  Kilgore Aff. ¶¶ 2-3.  It is inescapable to conclude that
Siren's conduct is so closely intertwined with Kilgore's contractual

27 relationship with Firstline that the forum selection clause must
apply as equally to Siren as it would to Kilgore.  See Manneti-

28 Farrow, Inc., 858 F.2d at 514 n.5.

1  forum selection clause.

2      **i. Defamation and Trade Libel**

3      Plaintiffs' claim in Count III alleging defamation and trade

4  libel falls within the scope of the forum selection clause, because

5  it relates in material part to the VP Agreement and whether it was

6  breached by Kilgore.  See Am. Compl. (doc. # 16) ¶ 74 (alleging

7  that Defendants have told third parties that Plaintiffs are guilty

8  of improper acts including breach of contract and breach of

9  fiduciary duty); cf. Tracer Research Corp. v. Nat'l Envtl. Servs.

10  Co., 42 F.3d 1292, 1295 (9th Cir. 1994) (discussing approvingly a

11  case from the Southern District of New York finding plaintiff's

12  defamation claims to be within scope of arbitration clause, because

13  they "necessarily turned on whether he was terminated with or

14  without cause, an issue which involved an interpretation of the

15  contractual relationship between the parties") (quoting McMahon v.

16  RMS Elec., Inc., 618 F. Supp. 189 (S.D.N.Y. 1985)).  Like the

17  claims in McMahon, Plaintiffs' defamation claims cannot be resolved

18  without an interpretation of the parties' contractual relationship

19  -- specifically, the nature of Kilgore's obligations under the VP

20  Agreement.  Therefore, Count III will be dismissed without

21  prejudice.

22      **ii. Abuse of Process**

23      Plaintiffs' claim in Count V for abuse of process is likewise

24  within the ambit of the forum selection clause.  Because Plaintiffs

25  allege that Defendants filed the Utah lawsuit for improper

26  purposes, the resolution of this claim will depend on whether

27  Defendants had a legitimate reason to pursue that action.  See Am.

28  Compl. (doc. # 16) ¶¶ 86-93.  In light of the dispute concerning

1   Kilgore's obligations under the non-solicitation and non-compete

2   provisions of the VP Agreement, the determination of this claim

3   necessarily "relat[es] to [the VP Agreement] or the breach or

4   enforcement [t]hereof." See VP Agreement (doc. # 4, pt. 2) at 47 ¶

5   19.   Count V for abuse of process will therefore be dismissed

6   without prejudice.[7]

7       **iii. Intentional Interference with Contractual Relations**

8       Defendants argue that the resolution of Plaintiffs' claim of

9   intentional interference with contractual relations will also turn

10  upon the enforceability and interpretation of the non-compete and

11  non-solicitation provisions of the VP Agreement, thereby bringing

12  that claim within the scope of the forum selection clause.   Mot.

13  (doc. # 5) at 9-10.   The Court agrees.

14      To establish a prima facie case of intentional interference

15  with contractual relations under Arizona law, one element a

16  plaintiff must prove is that the defendant's conduct was improper.

17  See Wagenseller v. Scottsdale Mem'l Hosp., 147 Ariz. 370, 710 P.2d

18  1025, 1042-43 (1985), superseded in part by Ariz. Rev. Stat. §

19  23-1501 (West 2003).   In determining whether the defendant's

20  ────────────────

21      [7] Plaintiffs maintain that the standard of liability for abuse
    of process is much less stringent than the manner in which it is
22  presented by Defendants. Compare Pls.' Resp. (doc. # 15) (plaintiff
    must show that defendant used process primarily for purpose other
23  than that for which it was intended) (citation omitted) with Defs.'
    Resp. (doc. # 14) (plaintiff must additionally show that action
24  "could not logically be explained without reference to the
    defendants' improper motives") (citation omitted).  The disagreement
25  over the appropriate standard is of no consequence to the resolution
    of the pending Rule 12(b)(3) motion.  Dismissal must follow even
26  under Plaintiffs' formulation, because resolution of the abuse of
    process claim will inevitably require some inquiry into Kilgore's
27  alleged breach of the VP Agreement to determine whether Defendants
28  were pursuing the Utah action primarily for an improper purpose.

1  actions were improper, courts consider the following seven factors:

2        (a) the nature of the actor's conduct,

3        (b) the actor's motive,

4        (c) the interests of the other with which the
         actor's conduct interferes,

5
6        (d) the interests sought to be advanced by the
         actor,

7        (e) the social interests in protecting the
         freedom of action of the actor and the
8        contractual interests of the other,

9        (f) the proximity or remoteness of the actor's
         conduct to the interference and

10
         (g) the relations between the parties.

11

12  See id. at 1042-43 (quoting Restatement (Second) of Torts § 767)

13  (1979).  In addition, it is recognized that among competitors

14  certain conduct is privileged and therefore not improper.

15        One is privileged purposely to cause a third
         person not to enter into or continue a business
16        relation with a competitor of the actor if

17        (a) the relation concerns a matter involved in
         the competition between the actor and the
18        competitor, and

19        (b) the actor does not employ improper means,
         and

20
         (c) the actor does not intend thereby to create
21        or continue an illegal restraint of
         competition, and

22
         (d) the actor's purpose is at least in part to
23        advance his interest in his competition with
         the other.

24

25  Restatement (Second) of Torts § 768(1) (1979); accord Edwards v.

26  Anaconda Co., 115 Ariz. 313, 565 P.2d 190, 193 (Ct. App. 1977).

27      Plaintiffs Kilgore and Siren allege, inter alia, that they

28  have attempted to recruit sales representatives from colleges in

1  Arizona, and that "Defendants have acted unlawfully by "caus[ing]
2  prospective employees, who Defendants knew were being recruited by
3  Siren, to refuse to come to work for Siren."  Am. Compl. (doc. #
4  16) ¶¶ 38, 68.  However, the non-compete and non-solicitation
5  provisions of the VP Agreement would ostensibly prohibit
6  Plaintiffs' recruiting practices.  See VP Agreement (doc. # 4, pt.
7  2) at 45-46 ¶ 6.  Thus, Defendants contend that their actions
8  cannot be found improper in light of their interests under the
9  agreement.  See Mot. (doc. # 5) at 10 ("Plaintiffs [sic] and the
10 company he formed certainly would have no right to complain that
11 Firstline interfered with contracts Plaintiffs executed unlawfully
12 in the first instance.").[8]

13     It is apparent that the resolution of Plaintiff's claim will
14 turn upon the enforceability and interpretation of the VP Agreement
15 as it bears upon the questions of Defendants' motive, the interests
16 sought to be advanced by Defendants, and the relations among the
17 parties.  See Restatement (Second) of Torts § 767(a), (d), and (g)
18 (1979).  As such, this claim is within the scope of the forum
19 selection clause as a dispute relating to the breach or enforcement
20 of the agreement.  See VP Agreement (doc. # 4, pt. 2) at 47 ¶ 19.

21

22          [8] Plaintiffs ask rhetorically "when, in Defendants' view, would
   their tortious and illegal conduct be sufficient to subject them to
23 sanctions from a court in Arizona?  Would Defendants have to be tried
   criminally in Utah if they chose to burn down Siren's offices in
24 Arizona or committed battery on Kilgore to keep him from doing
   business in security systems' sales."  Resp. (doc. # 15) at 5.  This
25 was asked again at oral argument.
          Instead of asking questions to define the outer limits of
26 acceptable conduct under the   privilege of competition, greater
   attention could be paid to answering the question of whether
27 Defendants' actual conduct was privileged.   Arguments based on
   egregious factual scenarios tend not to illuminate arguments based on
28 facts in issue.

1   Count II for intentional interference with contractual relations

2   will be dismissed without prejudice.

3          **iv. Restraint of Trade**

4          Under section 44-1402, "[a] contract, combination or

5   conspiracy between two or more persons in restraint of, or to

6   monopolize, trade or commerce, any part of which is within this

7   state, is unlawful."  Ariz. Rev. Stat. § 44-1402 (West 2003).

8   Plaintiffs allege that Defendants, in "seeking to destroy Siren as

9   a business and to prevent Kilgore from doing business as a

10  potential future competitor of Firstline," have acted unlawfully

11  under Ariz. Rev. Stat. § 44-1402.  Am. Compl. (doc. # 1) ¶¶ 80-85.

12  In particular, Plaintiffs challenge the non-compete clause in the

13  VP Agreement as imposing an unreasonable restraint on competition.

14  <u>See</u> Am. Compl. (doc. # 16) ¶¶ 80-85; Reply (doc. # 21) at 12:19-26.

15  Adjudication of this claim will therefore require a determination

16  of that clause's enforceability by considering "the facts peculiar

17  to the business in which the restraint is applied, the nature of

18  the restraint and the reasons for its adoption."  <u>See</u> <u>Three Phoenix</u>

19  <u>Co. v. Pace Indus.</u>, 135 Ariz. 113, 659 P.2d 1258, 1260 (1983)

20  (applying "rule of reason" to determine whether covenant not to

21  compete violated federal antitrust law) (internal quotations

22  omitted)[9]; <u>cf.</u> <u>Valley Med. Specialists v. Farber</u>, 194 Ariz. 363,

23  982 P.2d 1277, 1283-86 (1999) (en banc) (discussing test for

24

25          [9]  In <u>Three Phoenix</u>, the Supreme Court of Arizona acknowledged

26  Ariz. Rev. Stat. § 44-1402 as the state counterpart to section 1 of
    the Sherman Act, 15 U.S.C. § 1, making its holding in the context of

27  the federal statute equally applicable to the resolution of claims
    brought under the state statute.  <u>See</u> <u>Three Phoenix Co.</u>, 659 P.2d at

28  1260.

1  determining enforceability of covenant not to compete).  Because

2  the inevitable questions of enforceability and interpretation bring

3  this claim within the scope of the forum selection clause, Count IV

4  for restraint of trade will be dismissed without prejudice.

5       Should Plaintiffs later take the position that their reply

6  (doc. # 21) had errantly characterized Count IV as a challenge to

7  the non-compete clause, or decide to extricate that theory from a

8  subsequent filing, the Court adds that Plaintiffs' antitrust claim

9  would be dismissed pursuant to Rule 12(b)(6) for failure to state a

10  claim upon which relief can be granted.  A district court may

11  dismiss a claim sua sponte under Rule 12(b)(6) where, as here, the

12  briefing of a related motion raises the issue upon which the

13  dismissal was based so as to give ample notice and opportunity for

14  the plaintiff to oppose dismissal.  See Omar v. Sea-Land Serv.,

15  Inc., 813 F.2d 986, 991 (9th Cir. 1987) (citing Wong v. Bell, 642

16  F.2d 359, 361-62 (9th Cir. 1981); accord 5 Charles Alan Wright &

17  Arthur R. Miller, Federal Practice & Procedure § 1357 (1969).  Sua

18  sponte dismissal is also appropriate "where the claimant cannot

19  possibly win relief."  Omar, 813 F.2d at 991.

20       In this case, the Court finds that the briefing of Plaintiffs'

21  motion for temporary restraining order (doc. # 4, pt. 7) provided

22  ample notice and opportunity to argue case dispositive issues.  In

23  response to Plaintiffs' motion, Defendants asserted that, "on the

24  face of their Complaint, Plaintiffs have failed to state a claim

25  under Arizona's antitrust statute," Resp. (doc. # 14) at 14, and

26  Plaintiffs, in turn, responded directly to that argument, Reply

27  (doc. # 21) at 12-14.

28       After reviewing all of the arguments raised in Plaintiffs'

- 17 -

1   motion and reply, and reading the allegations of the Complaint in

2   the light most favorable to Plaintiffs, the Court concludes that

3   Plaintiffs could not possibly obtain relief on their antitrust

4   claim.   The weight of authority from the Supreme Court and the

5   Ninth Circuit supports Defendants' position.   The named Defendants

6   -- an employee, an officer, and the corporation for which they work

7   -- are incapable of conspiracy within the meaning of Ariz. Rev.

8   Stat. § 44-1402.   See Copperweld Corp. v. Independence Tube Corp.,

9   467 U.S. 752, 769 (1984) (officers or employees of the same firm

10  are incapable of conspiracy to harm or restrain competition);

11  Freeman v. San Diego Ass'n of Realtors, 322 F.3d 1133, 1147-48 (9th

12  Cir. 2003) (same).[10]   Therefore, even if Plaintiffs later decide

13

14  _____
        [10]        Federal court interpretations of the Sherman Act, 15
    U.S.C. § 1, et seq., may be used as a guide in construing Arizona's
15  Uniform State Antitrust Act, Ariz. Rev. Stat. § 44-1401, et seq.
    Ariz. Rev. Stat. § 44-1412 (West 2003) (". . . [C]ourts may use as a
16  guide interpretations given by the federal courts to comparable
    federal antitrust statutes."); see also Johnson v. Pac. Lighting Land
17  Co., 817 F.2d 601, 604 (9th Cir. 1987) (construing Ariz. Rev. Stat.
    § 44-1402 in light of federal court decisions).   Copperweld and
18  Freeman are particularly appropriate guides in this case because the
    Supreme Court of Arizona has specifically recognized Ariz. Rev. Stat.
19  § 44-1402 as the Arizona counterpart to 15 U.S.C. § 1, the federal
    statute upon which those cases were based.   See Three Phoenix Co.,
20  659 P.2d at 1260.
        Plaintiffs cite to the decision of the Court of Appeals of
21  Arizona in Bunker's Glass Co. v. Pilkington PLC, 202 Ariz. 481, 47
    P.3d 1119 (Ct. App. 2002), for the proposition that state public
22  policy concerns may override persuasive federal court authority in
    antitrust matters.   Reply (doc. # 21) at 12.   In Bunker's Glass the
23  court merely observed that public policy favors recognition of an
    indirect purchaser's standing to sue under state antitrust laws,
24  notwithstanding the contrary position taken by the Supreme Court with
    respect to claims brought under the Sherman Act.   See Bunker's Glass
25  Co., 47 P.3d at 1123-30.   However, Plaintiff does not cite any
    Arizona authority that would support deviation from the "single
26  entity" rule of Copperweld.   Moreover, Plaintiffs' vague and belated
    references to Defendants' arrangements with third parties, Reply
27  (doc. # 21) at 13, are without support from the amended complaint,

28

- 18 -

1  that they have no quarrel with the non-compete clause, Count IV for

2  restraint of trade would still be dismissed for failure to state a

3  claim upon which relief could be granted.

4       **v. Injunctive Relief**

5       Finally, Plaintiffs seek injunctive relief based on the

6  aforementioned claims of intentional interference with contractual

7  relations, defamation and trade libel, restraint of trade, and

8  abuse of process. <u>See</u> Am. Compl. (doc. # 16) ¶¶ 56-64.  The VP

9  Agreement's forum selection clause requires dismissal of those

10 underlying claims, leaving no basis for equitable relief in the

11 future.  Accordingly, Count I for permanent injunction will also be

12 dismissed without prejudice.

13      Because Defendants' motion to dismiss (doc. # 5) will be

14 granted in its entirety, Defendants' motion to stay (doc. # 5) and

15 Plaintiffs' motion for temporary restraining order (doc. # 4, pt.

16 7) will be denied and dismissed as moot.

17 **IV.  CONCLUSION**

18      In light of the foregoing analysis,

19      IT IS ORDERED that Defendant Erin Keyes' Rule 12(b)(2) motion

20 to dismiss (doc. # 5), construed as a Rule 21 request for an order

21 dropping her as a party for reason of misjoinder, is GRANTED.

22      IT IS FURTHER ORDERED that Defendants' Rule 12(b)(3) motion to

23 dismiss (doc. # 5) is GRANTED.  Counts I, II, III, IV, and V of

24 Plaintiffs' First Amended Complaint (doc. # 16) are dismissed

25 without prejudice.

26      IT IS FURTHER ORDERED that Plaintiffs' motion for temporary

27 ────────────────────

28 Am. Compl. (doc. # 16).

- 19 -

1  restraining order (doc. # 4, pt. 7) is DENIED and dismissed as
2  moot.

3      IT IS FURTHER ORDERED that Defendants' motion to stay (doc. #
4  5) is DENIED and dismissed as moot.

5      IT IS FINALLY ORDERED directing the Clerk of the Court to
6  enter judgment in favor of Defendants and terminate this case.

7      DATED this 17th day of May, 2006.

                                Robert C. Broomfield
                                Senior United States District Judge

15  Copies to counsel of record